# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

DARREN BECKHAM,

               *Plaintiff,*

       v.

ONE FINANCE, INC. and COASTAL
COMMUNITY BANK,

               *Defendants.*

Civil Action No.: 3:25-cv-390

**COMPLAINT WITH JURY
DEMAND**

Plaintiff, Darren Beckham ("Mr. Beckham" or "Plaintiff"), by and through his undersigned attorneys, alleges the following against One Finance, Inc. ("One") and Coastal Community Bank ("CCB"):

## PRELIMINARY STATEMENT

1.      Plaintiff is a victim of unauthorized transactions by unknown perpetrator(s).

2.      On or about July 1, 2024, Plaintiff received several text messages from One stating several purchases were made from his account with One (the "Account").

3.      Shortly after, Plaintiff accessed his Account and became aware of 6 unauthorized transactions from his Account (the "Unauthorized Transactions").

4.      The amount transferred out of Plaintiff's Account totaled $4,387.00 (the "Stolen Funds").

5.      Plaintiff promptly and repeatedly contacted One regarding the disputed transaction(s) and provided supporting documentation, but to no avail.

6.      To date, One has failed to reimburse Plaintiffs for the Stolen Funds.

7.      Plaintiff brings claims against Defendants for violations of the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA"); Conversion; Negligence; and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. § 75-1.1 *et seq.*

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction conferred by 28 U.S.C. § 1331 and 15 U.S.C. § 1693m(g), which allows claims under the EFTA to be brought in any appropriate court of competent jurisdiction.

9. This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

10. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

11. Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiff resides in this district, a substantial part of the events and omissions complained of took place in this District and the defendants maintain offices, transact business, and are otherwise found in this district.

## PARTIES

12. Plaintiff Darren Beckham is a natural person and citizen of Cherryville residing in Gaston County, North Carolina.

13. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1693a(6).

14. At all times relevant, Plaintiff's accounts with One were used for personal, family, or household purposes and constitutes an "account" as defined by 15 U.S.C. § 1693a(2).

15. Defendant One Finance, Inc. is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9) and regularly engaged in the business of "electronic fund transfers" between consumer accounts as defined in 15 U.S.C. § 1693a(7).

16. Defendant Coastal Community Bank is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial

institution as defined by the EFTA, 15 U.S.C. § 1693a(9) and regularly engaged in the business of "electronic fund transfers" between consumer accounts as defined in 15 U.S.C. § 1693a(7).

## **FACTUAL ALLEGATIONS**

17.     On or about July 1, 2024, Plaintiff received several text messages from One stating several purchases were made from the Account.

18.     Shortly after, Mr. Beckham accessed his Account and became aware of the following 6 Unauthorized Transactions from the Account:

| Merchant Name | Amount | Denial No. |
|---|---|---|
| MoonPay | $102.00 | 2407020261C |
| MoonPay | $265.00 | 2407020250C |
| MoonPay | $1,230.00 | 2407020250C |
| MoonPay | $800.00 | 2407020250C |
| Ze Lian Limited | $995.00 | 2407020236C |
| Ze Lian Limited | $995.00 | 2407020236C |

19.     At that time, Plaintiff became aware that the email address linked to the Account had been changed and was no longer Plaintiff's email.

20.     On or about July 2, 2024, Plaintiff called One's Customer Service line and filed a dispute.

21.     Shortly after, One froze the Account.

22.     By email dated July 2, 2024, One informed Plaintiff dispute 2407020236C had been received for the Unauthorized Transactions totaling $1,990.

23.     By email dated July 2, 2024, One informed Plaintiff dispute 2407020250C had been received for the Unauthorized Transactions totaling $2,295.

24.     By email dated July 2, 2024, One informed Plaintiff dispute 2407020261C had been received for the Unauthorized Transactions totaling $102.

25.     By email dated July 3, 2024, Plaintiff was informed that as part of his account application with One, a complete online verification was needed.

26.     Shortly after, a One specialist supervisor requested Plaintiff a photo of his driver's license, state ID, or passport and provided a link via email.

27.     By email dated July 4, 2024, One informed Plaintiff that the Account had been restricted due to unusual activity.

28.     Shortly after, One informed Plaintiff that the Account had been closed, no further information could be shared, and that the remaining funds in the Account would be disbursed within five business days.

29.     By email dated July 4, 2024, One denied dispute 2407020261C for the Unauthorized Transactions totaling $102.00.

30.     Shortly thereafter, Mr. Beckham replied to One's July 4, 2024 email, stating his mailing address had been changed.

31.     By email dated July 4, 2024, One informed Plaintiff a request to reopen case 2407020261C had been received.

32.     On or about July 5, 2024, Plaintiff received a check for the amount of $27.05 for the remaining balance left in the Account.

33.     By email dated July 5, 2024, One denied the renewed dispute 2407020261C for the Unauthorized Transactions totaling $102.00.

34.     On or about July 6, 2024, Plaintiff filed a complaint with the Federal Trade Commission (the "FTC").

35.     By email dated July 6, 2024, Plaintiff received a new denial for dispute 2407020261C.

36.     On or about July 7, 2024, Plaintiff filed a police report for the Unauthorized Transactions with the Cherryville Police Department.

37.     By email dated July 9, 2024, Plaintiff informed One he had filed a police report with the Cherryville Police Department.

38.     By email dated July 10, 2024, One requested a copy of the police report.

39.     By email dated July 11, 2024, Plaintiff sent a copy of the police report to One.

40.     By email dated July 12, 2024, Plaintiff received a new denial for dispute 2407020261C.

41.     By email dated July 15, 2024, One requested photos or screenshots of the supporting documentation Plaintiff had.

42.     That same day, Plaintiff re-sent photographs of the police report.

43.     By email dated July 16, 2024, a One customer service representative informed Plaintiff his dispute had been denied and requested new information to reopen the dispute.

44.     That same day, Plaintiff requested the documentation used by One to deny his dispute.

45.     In their response to Plaintiff's documentation request, One cites the reasons the disputes were denied, specifically:

- As per the investigation please note that no personal information was changed on the user's account. There are multiple contact numbers changed in the user's account. There are changes in the direct account usage link on the account. Foreign logins found in the account. There are multiple attempts for force login and verification done on the user's account.

- We observed that no error occurred in the disputed transactions.

46.     By email dated July 16, 2024, One denied dispute 2407020236C for the Unauthorized Transactions totaling $1,990.

47.     By email dated July 16, 2024, One denied dispute 2407020250C for the Unauthorized Transactions totaling $2,295.

48.     By email dated July 17, 2024, Plaintiff informed One that he did not approve the Unauthorized Transactions and provided a copy of the police report and 2 screenshots of the Unauthorized Transactions.

49.     That same day, Defendants informed Plaintiff that dispute 2407020250C had been denied.

50.     By email dated July 18, 2024, Plaintiff received a new denial for dispute 2407020236C.

51.     To date, Defendants have failed to reimburse Plaintiff for the Stolen Funds.

## CAUSES OF ACTION

### COUNT 1
### Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693 *et seq*.

52.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

53.     Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendants bear the responsibility for unauthorized transfers and withdrawals such as the Unauthorized Transfers in question.

54.     Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> (1) $50; or

(2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

55.     Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

56.     This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. 1693g(a)(2).

57.     The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

(b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:

(1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.

(2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:

(i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and

(ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

58.     Denials based on a consumer's alleged negligence are expressly prohibited under the EFTA's implementing regulations. See Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer

cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.")

59. Under the EFTA, consumers who are tricked into providing account access by a scammer posing as a bank employee are not liable for the transactions initiated by the scammer, which are unauthorized electronic fund transfers under § 1693a(12). *See, e.g.*, Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.").

60. Thus, Defendants' failure to reimburse Plaintiff is patently unlawful and in violation of Section § 1693g.

61. Defendants' stated basis for denial is invalid under the EFTA.

62. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized. 15 U.S.C. § 1693g(b).

63. Defendants cannot meet its burden of proof here, where Plaintiff:

a) Promptly disputed the transactions;

b) Provided a police report;

c) Has no criminal history;

d) Has no history of filing false disputes; and

e) The thefts are inconsistent with Plaintiff's pattern of use.

64. Defendants also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff claim. 15 U.S.C. § 1693f(d). *See* CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions

must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

65.     As a direct and proximate result of Respondents' conduct, Plaintiff has suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

66.     Defendants did not conduct a good faith investigation regarding the Stolen Funds.

67.     Defendants did not have a reasonable basis for believing the account was not in error based on the evidence Plaintiff provided to Defendants.

68.     Specifically, Respondents' conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiff's account was not in error, and also constitutes a knowing and willful conclusion that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.

69.     As a direct and proximate result of Respondents' violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

**COUNT II**
**CONVERSION**

70.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

71.     Plaintiff had a possessory right to the funds in his accounts.

72.     Under the circumstances set forth herein, the funds constituted personal property.

73.     Defendants intentionally, and without authority, assumed and exercised control over Plaintiff's funds.

74.     Defendants knew or should have known that it had no authority or interest in the funds.

75.     Plaintiff did not consent in any manner to Defendants' taking of the funds. Defendants' conduct was not privileged nor justified.

76.     Defendants' dominion over the funds and interference with the funds was in derogation of Plaintiff's rights, including but not limited to his right to have the funds returned to him.

77.     Defendants' actions were intentional, deliberate, willful, wrongful, oppressive, reckless, and with such disregard of the rights of Plaintiff as to constitute legal malice (although not based on actual hate). Despite Plaintiff's repeated attempts to regain possession of his funds, Defendants simply ignored him and continued to deprive him of the rightful use of his property.

78.     As a result of Defendants' actions, Plaintiff suffered actual damages, including but not limited to the amount of the funds converted.

79.     Defendants' actions in taking and interfering with Plaintiff's funds, when it had no right to do so, constituted the tort of conversion, entitling him to recover, among other things, compensatory damages, punitive/exemplary damages, and costs.

## COUNT III
### North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA")
### N.C.G.S. § 75-1.1 *et seq.*

80.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

81.     At all times relevant, Defendants' actions, practices, and conduct was engaged in and affecting commerce in the state of North Carolina under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. § 75-1.1 et seq.

82.     Defendants violated the UDTPA by utilizing unfair, false, unfair and misleading practices, actions, and representations in connection with the unauthorized funds.

83.     Defendants complete failure to investigate, review and consider relevant documents and information provided by Plaintiff, and correct their mistakes with respect to the unauthorized funds was wholly unfair.

84.     Defendants have continued the unfair and false actions by failing to return the unauthorized funds, despite repeated attempts by Plaintiff to remedy Defendants' unlawful actions and the overwhelming amount of evidence provided by Plaintiff establishing these transactions as unauthorized.

85.     Defendants' actions as described hereinabove are knowing and willful, offend established public policy, unethical, unscrupulous, substantially injurious to consumers, and have the capacity or tendency to mislead. This was demonstrated by their continued refusal to investigate, remedy, or correct their mistakes, and to comport their behavior to applicable North Carolina law. The actions, pattern of conduct, and methods employed by Defendants were, in addition, patently unfair when judged against its profit-incentivized motive, intention, and the extremely negative effects that their actions and conduct have upon the average ordinary North Carolina citizens and consumers, including the Plaintiff.

86.     The unscrupulous, unfair, and misleading actions and conduct of Defendants, as set forth herein, is in and effecting commerce and proximately caused economic injury to Plaintiff.

87.     Defendants' actions and pattern of conduct, constitute unfair acts or practices pursuant to Chapter 75 of the North Carolina General Statutes. Those actions as detailed herein, offend established public policy, are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to North Carolina consumers and include, but are not limited to the following:

a.      Failing to return the unauthorized funds;

b.      Failing to investigate, correct, or remedy their mistakes with respect to the unauthorized funds;

c.      Failing to review and consider the evidentiary support provided by Plaintiff;

d.      Failing to act as a reasonably prudent financial institution, creditor, and other business entity would under the same or similar circumstances; and,

e.      Engaging in unfair and/or misleading actions and conduct.

88.      Defendants' conduct proximately caused injury to Plaintiff in that he suffered financial loss, anxiety, frustration, anger, annoyance, and emotional distress.

89.      As a direct and proximate result of Defendants' unfair acts and practices, in or affecting commerce, Plaintiff is entitled to recover treble damages from NFCU, pursuant to N.C.G.S. § 75-16, and to recover his reasonable attorneys' fees and costs as provided for in N.C.G.S. § 75-16.1.

## COUNT IV
## Punitive Damages

90.      Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

91.      Defendants are also liable for punitive damages in that it conducted its wrongful behavior described herein willfully, intentionally, maliciously, and/or with a reckless and conscious disregard for Plaintiffs' rights and interest.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seek(s) judgment in her favor and damages against Defendants:

A.      Determining that Defendants negligently and/or willfully violated the EFTA;

B.    Awarding Plaintiff actual, statutory, and treble damages as provided by the
      EFTA and NC UDTPA;

C.    Awarding Plaintiff his actual damages and costs for conversion;

D.    Awarding Plaintiff reasonable attorney's fees and costs as provided by the
      EFTA and NC UDTPA;

E.    Award Plaintiff punitive damages; and

F.    Granting such other and further relief, including equitable and declaratory
      relief, as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demand(s) a trial by jury of all issues triable by jury.

Dated: June 10, 2025

*/s/Daniel A. Schlanger*
Schlanger Law Group, LLP
*Pro Hac Vice Application Forthcoming*
150 Allens Creek Road, Suite 240
Rochester, NY 14618
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net

*/s/ Karl S. Gwaltney*
Karl S. Gwaltney
N.C. State Bar No. 45118
Ian E. Vance
N.C. State Bar No. 60056
**MAGINNIS HOWARD**
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel:    919-526-0450
Fax:    919-882-8763
kgwaltney@carolinalaw.com
ivance@carolinalaw.com

*Attorneys for Plaintiff*